## Case No. 17,413.
### WENTWORTH v. NICKERSON.
[See Case No. 3,054.]

## Case No. 17,414.
### WENTWORTH v. UNITED STATES.
[2 Story, 452.] [1]

Circuit Court, D. Massachusetts. Oct., 1843.

COLLECTORS AND NAVAL OFFICERS — SALARIES — OFFICE EXPENSES.

By Act May 7, 1822, c. 107, § 9 [3 Stat. 695], providing for the salaries of collectors and naval officers, the necessary expenses of the office are a primary charge upon the gross receipts or fund, and the officer is entitled to the remainder only, after such deduction: but he is not enti-

[1] [Reported by William W. Story, Esq.]

tled thereby to receive $3,000, and to charge any deficiency below that sum in the receipts, to the government.

Writ of error to the district court [of the United States for the district] of Massachusetts.

The original suit was debt, brought by the United States upon the official bond of Isaac O. Barnes, as naval officer for the collection district of Boston and Charlestown, upon which the plaintiff in error and one Gardner Nevens were sureties, conditioned, that Barnes had duly executed and discharged, and should continue to execute and discharge, all the duties of the said office according to law. The plaintiff in error (the original defendant,) after oyer of the bond and condition, pleaded several pleas, upon which issues were joined, and the trial had; but as none of them are material to the questions discussed upon the writ of error, it is unnecessary to recite them. At the trial, the plaintiff in error prayed the court to instruct the jury, "that the said Isaac O. Barnes is entitled to retain to his own use all the fees received during each year, that he held the office of naval officer, and for such fraction of a year as he might have held the said office, not exceeding the sum of three thousand dollars for such fraction of a year, exclusive and free from any deduction for clerk hire, or other expenses of his office;" which instruction the court refused to give. But the court did instruct the jury, "that the defendant Barnes was entitled to retain the fees of his office, not exceeding three thousand dollars per year, and a like sum for such fraction of a year as he held the office, provided the fees received during any year or such fraction of a year amounted to the sum of three thousand dollars, after deducting therefrom the clerk hire, and other expenses of his office for such year and fraction of a year;" and thereupon the judge left the cause to the jury, who found a verdict for the United States. [Case unreported.] To which refusal to give the instruction so asked, and also the instruction so given, the plaintiff in error filed his bill of exceptions.

Mr. Goodrich, for plaintiff in error.
Mr. Dexter, U. S. Dist. Atty.

STORY, Circuit Justice. The whole question in this case turns upon the true interpretation of Act March 2, 1799, c. 129, § 2 [1 Story's Laws, 665; 1 Stat. 627, c. 22], and of Act May 7, 1822, c. 107, § 9. The former act, after providing that certain fees and emoluments shall be paid to collectors and naval officers, to be equally divided between them, proceeds to declare, that the expense of fuel, office rent, and necessary stationery, for the collectors of Salem and Beverly, Boston and Charlestown, &c., shall be paid, three fourths by the said collectors, and the other fourth by the respective naval officers in those districts. So that under this act all the expenses of clerk hire, &c., were to be paid by the collectors

and naval officers out of the fees and emoluments of their offices, without any charge whatsoever to the government. By the act of 1822 (chapter 107, § 9) the system was changed; and it was there provided, "that whenever the emoluments of any collector of the customs of the ports of Boston, New York, &c. (enumerating certain ports), or the emoluments of any naval officer of either of those ports shall exceed three thousand dollars, in any one year, after deducting therefrom the necessary expenses incident to his office in the same year, the excess shall in every such case be paid into the treasury of the United States." And in order to provide a suitable number of clerks, and no more, to be employed by the collectors and naval officers, and to limit and fix their compensation, so as to carry into complete effect the new system, it was provided in the same act (section 15) "that the secretary of the treasury may, from time to time, limit and fix the number and compensation of the clerks to be employed by any collector, naval officer, or surveyor, and may limit and fix the compensation of any deputy of such collector, naval officer, or surveyor." Now, the sole and real question between the parties, in the present case, is, whether, supposing the fees and emoluments of the office are not sufficient to leave three thousand dollars to the naval officer, after deducting the necessary expenses incident to his office (that is, his one-fourth of all the expenses stated in the act of 1799, c. 129, § 2), he is still to receive the three thousand dollars, and the deficiency is to be borne by the government; or whether the necessary expenses of his office are a primary charge upon the gross receipts or fund, and the naval officer is entitled only to so much as remains after such deduction. My opinion is, that the latter is the true interpretation of the 9th section of the act of 1822 (chapter 107). The special object of which is to provide that the emoluments of the naval officer shall never exceed three thousand dollars, although it may fall far short of it. In truth, the very terms of the section lead almost necessarily to this conclusion, the emoluments are not to exceed the stipulated sum, "after deducting the necessary expenses incident to the office;" so that the expenses are first to be deducted before any distribution or division of the emoluments.

The principal argument urged against this interpretation of the state is one ab inconvenienti, that it places the collectors and naval officers wholly within the power of the secretary of the treasury, as to the amount of their emoluments; for he may fix the number and compensation of clerks so as to take away a large proportion of all the emoluments of these officers. But if the law has vested this absolute discretion in the secretary of the treasury, I know of no right of courts of justice to limit or control it. We are not to presume, that the secretary will misuse or abuse the power. On the contrary, we are bound to presume, that he will exercise a sound and liberal discretion in the matter, so as best

to promote the public service, and at the same time to secure to all the officers, affected by it, a just and reasonable compensation for the performance of their official duties. I am not aware, that the subsequent acts of congress have in any manner changed or affected the amount of the compensation to be allowed to these officers. All that the subsequent acts, from 1834 downward, profess to provide, is to prevent any diminution of their emoluments founded upon the reduction of the duties, under Act 1832, c. 224 [4 Stat. 580].[3]

My judgment, therefore, is that there is no error in the district judge in refusing the instruction prayed for by the plaintiff in error, or in the instruction, which he absolutely gave to the jury. The judgment of the district court is therefore affirmed with costs.

---

[3] See appropriation acts of June 27, 1834, c. 92, § 2 [4 Stat. 698]; of March 3, 1835, c. 30, § 3 [4 Stat. 771]; of March 3, 1837, c. 30, § 2 [5 Stat. 157].

